# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION



FILED IN THIS OFFICE

FEB 17 2025

Clerk U.S. District Court
Greensboro, N.C.
BY

CHARLES DEXTER JOHNSON,

    Plaintiff,

v.

                           CIVIL ACTION NO. 1:26-CV-171

WILLIAM M. VAN O'LINDA, JR.;
VAN CAMP & VAN O'LINDA, PLLC;
GDBKB, LLC;
GARY D. BULLARD;
KIMBERLY ANN BULLARD;
AARON C. LOW;
STOTT, HOLLOWELL, WINDHAM & STANCIL, PLLC;
WHITAKER'S HOLDINGS, LLC;
REX A. WHITAKER;
ROBERT PETER DOWD III;
JONATHAN CARTER DOWD;
ROBBINS MAY & RICH LLP;
CLAIRE C. TOULOUSE; and
FIRST CITIZENS BANK & TRUST COMPANY,

    Defendants.

---

## VERIFIED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, DECLARATORY JUDGMENT, AND DAMAGES

(18 U.S.C. § 1962 — RICO; 18 U.S.C. § 1341/1343 — Wire and Mail Fraud;
Quiet Title; Fraud Upon the Court; Breach of Fiduciary Duty;
Fraudulent Conveyance; Unjust Enrichment; Constructive Trust)

**NOW COMES** Plaintiff Charles Dexter Johnson, appearing pro se, and files this Verified Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction against the above-named Defendants, and in support thereof states as follows:

## I. PRELIMINARY STATEMENT

1. This is an emergency action to prevent the imminent and irreparable loss of two parcels of real property in Moore County, North Carolina, valued at approximately $1.3 million, which are being marketed for sale by Defendants through a fraudulent scheme involving attorney theft, straw purchasers, shell companies, wire and mail fraud, and fraud upon a state court.

2. Plaintiff previously sought protection in Moore County Superior Court, Case No. 25 CV 002561-620. The Honorable Judge Stephen C. Stokes reviewed Plaintiff's Emergency Motion for Temporary Restraining Order filed January 6, 2026, and an additional filing submitted January 27, 2026, including Plaintiff's detailed sixty-eight (68) paragraph affidavit and all supporting exhibits. (**Exhibit Q.**) Based on his review of both filings, Judge Stokes entered an Order staying the sale of the subject properties, finding sufficient grounds to restrain Defendants.

3. On February 4, 2026, Plaintiff filed via File and Serve an Ex Parte Motion to Stay the sale, a Proposed TRO Order, and the actual Order prepared for Judge Stokes to sign at the February 9, 2026 hearing. These filings included new documented evidence regarding Defendants Van O'Linda, GDBKB, LLC, and Aaron C. Low. (**Exhibit P.**)

4. On February 6, 2026, Sierra Ritchie, the Court Coordinator, informed Plaintiff that Judge Stephen C. Stokes had been replaced by Judge Michael Stone for the February 9 hearing — just three days before the hearing at which Judge Stokes was scheduled to sign the proposed Order. On the same date, Ms. Ritchie requested that Plaintiff send the February 4 filings to Judge Stone for his review. Plaintiff complied and forwarded all filings to Judge Stone through Ms. Ritchie.

5. On that same date — February 6, 2026, at 4:12 PM — Defendant Van O'Linda, through counsel Claire C. Toulouse of Robbins May & Rich LLP, Pinehurst, North Carolina, electronically filed a combined Motion to Dismiss, Rule 60 Motion to Vacate the Emergency Order, Motion for Sanctions Against Plaintiff, and Motion for Gatekeeper Order seeking to prohibit Plaintiff from making any further filings. (**Exhibit R.**) **The simultaneous occurrence of the judge substitution and the filing of this defense motion on the same date is critical.**

6. Van O'Linda's February 6 motion reveals a fact of independent significance: the Certificate of Service lists GDBKB, LLC's address as **90 Cherokee Road, Third Floor Suite, Pinehurst, NC 28374** — the **identical address** as Van Camp & Van O'Linda, PLLC. (**Exhibit**

**R, page 9.**) The shell company that Van O'Linda created to hold Plaintiff's stolen properties is physically located at Van O'Linda's own law firm. This fact, disclosed in Defendants' own filing, conclusively demonstrates Van O'Linda's ownership and control of GDBKB, LLC.

7. On February 9, 2026, at the hearing, Plaintiff personally handed Judge Stone the Motion for Continuance requesting the hearing be continued to April 6 or May 11, 2026 (**Exhibit M**), a request to change judges back to Judge Stokes, and a pleading explaining that as a pro se Plaintiff he could not effectively prosecute the fraud upon the court, attorney theft, and wire and mail fraud claims and needed to retain counsel.

8. Despite having received all of Plaintiff's filings — both through Ms. Ritchie on February 6 and by hand delivery at the hearing on February 9 — Judge Stone addressed none of them. He did not rule on or acknowledge the Motion for Continuance. He did not address the request to return the case to Judge Stokes. He did not acknowledge the Ex Parte Motion to Stay or the Proposed Orders filed February 4. He did not discuss the new documented evidence against Defendants. He did not acknowledge the pleading regarding the need for counsel. Instead, Judge Stone addressed only a single procedural issue — service of process — and used a Rule 60(b) motion to vacate Judge Stokes' Order staying the sale.

9. When Plaintiff requested permission to address the Court, Judge Stone commanded Plaintiff that he could not speak. Plaintiff was not permitted to address any issue. Had Plaintiff been permitted to be heard, he would have informed the Court that service of process had been initiated on February 2, 2026 (**Exhibit K**) — a full week before the hearing — and was being actively perfected; that the service delay was caused in part by the Moore County Clerk's Office failing to arrange service after the December 12, 2025 complaint filing (**Exhibit O**); and that Plaintiff had identified and corrected the deficiency in late January with the assistance of counsel in a separate matter.

10. On February 12, 2026, Judge Stone entered a one-page, one-paragraph Order vacating Judge Stokes' Emergency Order. (**Exhibit S.**) The Order contains **no findings of fact, no conclusions of law, and no legal analysis whatsoever.** It merely states that "Relief from Judgment is hereby ALLOWED" and that the Emergency Order is "set aside as void." The Order claims it was entered on "the Court's own initiative" under Rule 60(b)(4) — despite the fact that Van O'Linda's counsel had filed a Rule 60(b)(4) motion on February 6. The Order states that the Court acted after "hearing from counsel" — not "hearing from the parties" or "hearing from Plaintiff." Plaintiff was pro se, was not counsel, and was commanded not to speak. Judge Stone heard from one side only.

11. Plaintiff believes the February 9, 2026 hearing was a setup and was not conducted above board. Judge Stokes — who had spent weeks reviewing the record, found sufficient merit to enter a stay, and was prepared to sign the proposed Order — was replaced by Judge Stone just three days before the hearing. Judge Stone then had before him a complete record of fraud upon

the court, attorney theft of $1.3 million in property, new documented evidence against the Defendants, and multiple pending motions, yet chose to address only one procedural deficiency that was already being cured. His refusal to let Plaintiff speak, his failure to address any of the substantive filings, his singular focus on vacating Judge Stokes' protective order — to the sole benefit of the Defendants accused of fraud and theft — and his subsequent one-page order with no analysis demonstrate a predetermined outcome.

12. Plaintiff now seeks federal court protection because the state court process has failed to provide adequate protection for his property rights and constitutional due process rights. The properties remain at imminent risk of sale, and Plaintiff has no adequate remedy at state law under the current circumstances.

## II. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and involves predicate acts of wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341).

14. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as all state law claims arise from the same case or controversy as the federal RICO claims.

15. The amount in controversy exceeds $75,000, exclusive of interest and costs. The properties at issue have a combined value of approximately $1.3 million, and Plaintiff seeks treble damages under 18 U.S.C. § 1964(c).

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because the properties are located in Moore County, North Carolina, which is within the Middle District; Defendants reside or conduct business in this District; and a substantial part of the events giving rise to this action occurred in this District.

## III. PARTIES

17. Plaintiff Charles Dexter Johnson is a citizen and resident of Cleveland County, North Carolina, residing at 524 Dixon School Road, Kings Mountain, NC 28086.

18. Defendant William M. Van O'Linda, Jr. is a licensed attorney and citizen of Moore County, North Carolina. Van O'Linda served as Plaintiff's attorney from approximately 2020 to 2021. While representing Plaintiff, Van O'Linda formed GDBKB, LLC for the purpose of acquiring Plaintiff's properties for his own benefit.

19. Defendant Van Camp & Van O'Linda, PLLC is a North Carolina professional limited liability company with its principal place of business at 90 Cherokee Road, Third Floor Suite, Pinehurst, NC 28374.

20. Defendant GDBKB, LLC is a North Carolina limited liability company organized on December 29, 2020, with its registered agent being Defendant Van O'Linda. GDBKB, LLC's address, as disclosed in Defendants' own Certificate of Service (**Exhibit R, page 9**), is **90 Cherokee Road, Third Floor Suite, Pinehurst, NC 28374 — the identical address as Van Camp & Van O'Linda, PLLC.** This confirms that GDBKB is owned, controlled, and operated by Van O'Linda from his own law firm.

21. Defendants Gary D. Bullard and Kimberly Ann Bullard are citizens of Moore County, North Carolina, residing at Post Office Box 431, Cameron, NC 28326. They served as straw purchasers in the scheme to transfer Plaintiff's properties to GDBKB, LLC.

22. Defendant Aaron C. Low is a licensed attorney formerly of Stott, Hollowell, Windham & Stancil, PLLC, with an address at 1546 Union Road, Suite D, Gastonia, NC 28054. Low represented Plaintiff and signed a Consent Order on June 20, 2016, that reversed the Court of Appeals decision in COA13-833 without Plaintiff's informed consent, constituting fraud upon the court.

23. Defendant Stott, Hollowell, Windham & Stancil, PLLC is a North Carolina law firm located at 401 East Franklin Blvd, Gastonia, NC 28053, vicariously liable for Low's conduct.

24. Defendant Whitaker's Holdings, LLC is a North Carolina limited liability company managed by Defendant Rex A. Whitaker, located at 890 Loblolly Drive, Vass, NC 28394, which held void title to the properties in the chain of fraudulent conveyances.

25. Defendant Rex A. Whitaker is a citizen of Moore County, North Carolina, who managed Whitaker's Holdings, LLC.

26. Defendants Robert Peter Dowd III (1532 Vass-Carthage Road, Carthage, NC 28327) and Jonathan Carter Dowd (1501 US 1 Hwy, Cameron, NC 28326) are citizens of Moore County, North Carolina. On July 29, 2008, the Dowds made a predatory loan to Plaintiff in the amount of $150,100.00, secured by both properties through a Deed of Trust recorded in Book 3449, Pages 312-315, Moore County Registry (Instrument # 2008012291). (Exhibit W.) The loan was structured as a two-year balloon — the entire principal was due by July 29, 2010. A $150,000 loan with a two-year term and no amortization is designed to force default and trigger foreclosure. The Dowds made this loan knowing Plaintiff had recently converted from a Chapter 13 to Chapter 7 bankruptcy and was financially vulnerable — a deliberate predatory lending scheme targeting a debtor they knew could not repay. (Exhibit X.) The Trustee named in the Deed of Trust was Robert M. Friesen, PLLC. After Plaintiff defaulted on this predatory

instrument, the Dowds initiated foreclosure through Moore County Special Proceeding 11-SP-116, which the North Carolina Court of Appeals subsequently declared void due to defective service of process. The Dowds' predatory lending scheme originated the entire chain of fraud described herein.

27. Defendant Robbins May & Rich LLP is a North Carolina law firm located at 120 Applecross Road, Pinehurst, NC 28374. Robert M. Friesen, Esq. — the Trustee named in the Dowds' predatory Deed of Trust and the attorney who prepared the Special Warranty Deed conveying Plaintiff's properties to Whitaker's Holdings, LLC after the void foreclosure — listed his address as 120 Applecross Road, Pinehurst, NC 28374 on the 2012 deed, the same address as Robbins May & Rich LLP. (Exhibit W.) The same law firm address thus appears at three critical points in this fraud: (1) the predatory loan that initiated the scheme; (2) the void deed that transferred Plaintiff's properties; and (3) the current defense of the property theft by Van O'Linda and GDBKB, LLC. Through its attorney Claire C. Toulouse, Robbins May & Rich LLP filed the February 6, 2026 Motion for Sanctions and Motion for Gatekeeper Order against Plaintiff. These motions were filed in bad faith, with knowledge that the underlying claims are supported by documented evidence including recorded deeds, a Court of Appeals decision, and a DOJ acknowledgment, and constitute an abuse of process designed to silence a fraud victim and prevent him from accessing the courts.

28. Defendant Claire C. Toulouse (NC State Bar No. 60450) is a licensed attorney with Robbins May & Rich LLP. Toulouse signed the February 6, 2026 filings, including the Motion for Sanctions certifying under Rule 11 that Plaintiff's claims are not well-grounded in fact — despite the existence of recorded deeds, a Court of Appeals decision declaring the foreclosure void, and a DOJ criminal referral acknowledgment. Toulouse's Rule 11 certification was itself made without reasonable inquiry.

29. Defendant First Citizens Bank & Trust Company is a North Carolina banking corporation with its principal place at Post Office Box 25187, Raleigh, NC 27611, involved in the underlying transactions.

## IV. FACTUAL BACKGROUND

### A. The Properties

30. This action concerns two parcels of real property in Moore County, North Carolina:

a. Property 1: 420 US Highway 15-501, Carthage, NC 28327 (Parcel ID 20090077) — approximately 1.44 acres with a 4,800 square foot commercial building; and

b. Property 2: 916 Stanton Hill Road, Carthage, NC 28327 (Parcel ID 00002523)
— approximately 7.3 acres of commercial land.

31. Plaintiff is the rightful owner of both properties. Plaintiff held title to both properties by deed prior to the events described herein. On July 29, 2008, both properties were pledged as collateral for a single loan of $150,100.00 from Defendants Robert Peter Dowd III and Jonathan Carter Dowd, due in full by July 29, 2010 — a two-year balloon designed to force default. (Exhibit W.) The properties have a combined current market value of approximately $1.3 million and are actively being marketed for sale by Defendants. (**Exhibit I.**)

## B. The Void Foreclosure and Court of Appeals Victory

32. The Dowds' predatory loan was part of a deliberate scheme targeting Plaintiff. The Dowds knew that Plaintiff had recently been discharged from a Chapter 13 to Chapter 7 bankruptcy conversion, making him financially vulnerable and unable to repay a $150,100 balloon loan within two years. (Exhibit X.) After Plaintiff defaulted on this predatory instrument, a foreclosure sale was conducted through Moore County Special Proceeding 11-SP-116. Whitaker's Holdings, LLC purchased Plaintiff's 4,800-square-foot facility at 420 US Highway 15-501 at the forced auction and began operating from the stolen property. On October 23, 2012, the Dowds executed a Special Warranty Deed conveying both properties to Whitaker's Holdings, LLC (Instrument # 2012017297, Book 4118, Pages 17-18, Moore County Registry; Excise Tax: $176.00). (Exhibit W.) The deed was prepared by Robert M. Friesen, Esq., 120 Applecross Road, Pinehurst, NC 28374, and covers both parcels: Plat Cabinet 5, Slide 109 and Plat Cabinet 14, Slide 75. On July 15, 2014, the North Carolina Court of Appeals issued its decision in Johnson v. Dowd, et al., COA13-833, reversing the trial court, vacating the void default judgments against Plaintiff, and vacating sanctions imposed on Plaintiff. The Court of Appeals found that service of process was defective, rendering the trial court's judgments void ab initio. (**Exhibit B.**)

33. Under the binding precedent of *Elam v. Hyatt*, 174 N.C. 426 (1917), a void foreclosure cannot transfer valid title. All subsequent transfers originating from the void foreclosure are therefore void.

33A. Plaintiff's ownership of each property rests on independent legal grounds:

**Property 2 (916 Stanton Hill Road):** Plaintiff held title by deed. The Dowds' predatory loan (Exhibit W) was secured by this property. The foreclosure originating from that loan was declared void by the North Carolina Court of Appeals in COA13-833 due to defective service of process. (Exhibit A.) Under Elam v. Hyatt, the void foreclosure could not and did not transfer valid title. Plaintiff never lost ownership of this property. The Dowds' subsequent deed to Whitaker's Holdings (Exhibit W) and all subsequent transfers — including to the Bullards and to GDBKB, LLC — are void ab initio.

**Property 1 (420 US Highway 15-501):** Plaintiff held title by deed. This property was collateral for the same Dowd predatory loan that secured Property 2, as documented in the Deed of Trust recorded at Book 3449, Pages 312-315. (Exhibit W.) The Dowds' Special Warranty Deed to Whitaker's Holdings (Book 4118, Pages 17-18) expressly covers both parcels — Plat Cabinet 5, Slide 109 and Plat Cabinet 14, Slide 75 — confirming that both properties went through the same foreclosure chain. Plaintiff's ownership of Property 1 is established on two independent grounds. First, the foreclosure proceeding that arose from the same predatory loan involved the same defective service of process that the Court of Appeals found void in COA13-833; the defective service that voided the judgment as to Property 2 necessarily voided the same proceeding as to Property 1, because a court that lacks personal jurisdiction over a defendant lacks it for all purposes. Second, even if the foreclosure is analyzed separately, Plaintiff's rights to Property 1 were taken through the June 20, 2016 Consent Order in 15 CVS 513 (Exhibit B), in which Defendant Low required Plaintiff to "waive, renounce, and transfer" all claims to both properties. That Consent Order was procured through fraud upon the court and is void. Plaintiff never validly surrendered title to Property 1 by any lawful means.

## C. The Fraud Upon the Court — Aaron C. Low and the Consent Order

34. Following Plaintiff's Court of Appeals victory, Defendant Aaron C. Low represented Plaintiff in Moore County Superior Court Case No. 15 CVS 513.

35. On June 20, 2016, Low signed a Consent Order in 15 CVS 513 that required Plaintiff to "waive, renounce, and transfer" all claims to the entire 8-plus-acre tract encompassing both properties. This Consent Order effectively reversed the Court of Appeals decision in COA13-833 — a lower court order purporting to override a higher court ruling. Defendant Low signed for Plaintiff; attorney Amy Hunt signed for only Whitaker's Holdings and TRO; and the Dowds did not even consent to the Consent Order. **(Exhibit A.)**

36. Plaintiff never gave informed consent to this Consent Order. Plaintiff was never informed that the Consent Order would reverse COA13-833 or that a lower court order could nullify a Court of Appeals ruling. Low ceased communications with Plaintiff after the Consent Order was signed.

37. This Consent Order constitutes fraud upon the court because it was procured through an attorney's intentional deception of both his client and the court, and its effect was to nullify a binding appellate decision.

37A. The fraudulent nature of the Consent Order and the predatory lending conspiracy have been independently confirmed by outside counsel. In a February 27, 2019 letter, attorney R.

Hayes Hofler III of the Law Offices of Hayes Hofler, P.A. — litigation and appellate counsel in Durham, North Carolina — reviewed the entire transaction history and concluded: (1) "The Consent Order actually reverses the COA decision of 7/15/14 which would have allowed Johnson to proceed as record owner of the entire 8A tract"; (2) the Consent Order "could be voidable under Rule 60 as having been unconscionably obtained for no or insufficient consideration"; (3) "the Dowds, Whitaker's and TRO conspired to loan money to Johnson whom they knew had just been discharged from a Chapter 7 bankruptcy and was otherwise vulnerable to a predatory lending scheme"; and (4) "Whitaker's Holdings and TRO are each corporate entities owned and operated by the same persons." (**Exhibit X.**) This independent legal analysis from experienced appellate counsel confirms that the Consent Order was fraudulently procured and that the Dowds' lending was a deliberate predatory scheme targeting a financially vulnerable individual.

### D. The Straw Purchaser Scheme — Van O'Linda, the Bullards, and GDBKB

38. In November and December 2020, while serving as Plaintiff's attorney, Defendant Van O'Linda sent Plaintiff emails misrepresenting North Carolina law, lying about the Court of Appeals ruling, and discouraging Plaintiff from pursuing his property rights. (Exhibits F, G.)

39. On December 2, 2020, Van O'Linda sent an email to Plaintiff falsely claiming a competing attorney was interested in the properties — a fabrication designed to pressure Plaintiff into abandoning his claims. (**Exhibit H.**)

40. On December 29, 2020 — twenty-seven (27) days after the December 2 email — Van O'Linda formed GDBKB, LLC with the North Carolina Secretary of State. Van O'Linda is the registered agent for GDBKB. (**Exhibit E.**)

41. On January 21, 2021, Defendants Gary D. Bullard and Kimberly Ann Bullard purchased both properties from Whitaker's Holdings, LLC for $425,000 (Book 5520, Pages 62-65, Moore County Registry). (**Exhibit D.**)

42. On or about December 22, 2021, the Bullards transferred both properties to GDBKB, LLC for zero dollars in consideration (Book 5771, Pages 390-391, Moore County Registry; NC Revenue Stamp: $0.00). (**Exhibit C.**)

43. Defendant Van O'Linda personally prepared the deed transferring the properties to GDBKB, LLC, as noted on the deed itself: "Prepared by: William M. Van O'Linda, Jr."

44. This two-step transaction — Bullards purchasing for $425,000 and immediately transferring to Van O'Linda's shell company for $0 — is a classic straw purchaser scheme designed to conceal Van O'Linda's acquisition of properties belonging to his own client.

44A. Every transfer in this chain treated both properties as a single package, proving they were always part of the same scheme: (1) the Dowds' predatory loan was secured by both properties (Exhibit W); (2) the Dowds' deed to Whitaker's Holdings conveyed both parcels in a single instrument (Exhibit W); (3) the Bullards purchased both properties together for $425,000 (Exhibit D); (4) the Bullards transferred both properties together to GDBKB, LLC for zero dollars (Exhibit C); and (5) the Consent Order required Plaintiff to "waive, renounce, and transfer" all claims to both properties (Exhibit B). No party at any stage treated these properties separately. Defendants cannot now claim that Plaintiff's ownership of 420 US Highway 15-501 is legally distinct from his ownership of 916 Stanton Hill Road when every recorded instrument in the chain binds them together. The void foundation — the predatory loan and defective foreclosure — taints every subsequent transfer of both properties.

45. In February 2021, shortly after the properties were secured in GDBKB, Van O'Linda terminated the attorney-client relationship with Plaintiff and ceased all communication.

46. Defendants' own February 6, 2026 filing (**Exhibit R**) confirms the connection between Van O'Linda and GDBKB, LLC. The Certificate of Service lists both GDBKB, LLC and Van Camp & Van O'Linda, PLLC at the **identical address: 90 Cherokee Road, Third Floor Suite, Pinehurst, NC 28374.** The entity created to hold Plaintiff's stolen properties operates from Plaintiff's former attorney's law office.

**E. State Court Proceedings and Judge Stone's Order**

47. On December 12, 2025, Plaintiff filed a 117-page Complaint in Moore County Superior Court against all named Defendants. On the same date, Plaintiff filed a Motion for Leave to Amend and a Lis Pendens on the subject properties. (**Exhibit L.**)

48. On January 6, 2026, Plaintiff filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction, along with a supporting Affidavit and Calendar Request.

49. Judge Stephen C. Stokes reviewed all filings, including Plaintiff's 68-paragraph affidavit, and entered an Emergency Order Staying Property Sale on February 4, 2026, finding sufficient grounds to restrain Defendants. (**Exhibit J.**)

50. On February 6, 2026, Judge Stokes was replaced by Judge Stone. On the same date, Van O'Linda's counsel filed the combined motion described above. On February 9, 2026, Judge Stone held a hearing at which he commanded Plaintiff not to speak, addressed only service of process, and vacated Judge Stokes' Emergency Order.

51. On February 12, 2026, Judge Stone entered a one-page Order (**Exhibit S**) that is remarkable for what it does not contain. The Order:

      a. Contains no findings of fact;

b. Contains no conclusions of law;

c. Contains no legal analysis or reasoning;

d. Does not identify any jurisdictional defect;

e. Does not address Rule 65's authorization of ex parte TROs;

f. Does not address the court's subject matter jurisdiction;

g. Does not address the service timeline or Rule 4(c)'s 60-day window;

h. Claims the Court acted on "the Court's own initiative" — despite Van O'Linda's counsel having filed a Rule 60(b)(4) motion three days earlier;

i. States the Court acted after "hearing from counsel" — not "from the parties" — while Plaintiff was pro se, was not counsel, and was commanded not to speak; and

j. Does not address any of Plaintiff's pending filings, including the Motion for Continuance, the Request for Judge Stokes, the Fraud Upon the Court pleading, or the Ex Parte Motion.

52. A substitute judge vacating another judge's protective order over $1.3 million in real property — with a one-paragraph order containing no findings, no analysis, and no legal reasoning, entered after hearing from only one side while commanding the other side not to speak — is not an exercise of judicial discretion. It demonstrates that the state court has become a hostile forum for Plaintiff.

53. On February 12, 2026, Defendants' counsel Claire C. Toulouse confirmed in writing via email that her February 6, 2026 motions "have not been set for hearing, have not been heard, nor ruled upon." (**Exhibit T.**) Toulouse further confirmed she was "not aware of any order allowing dismissal of this action, sanctions, nor a gatekeeper order." Critically, Toulouse's email addressed only the dismissal, sanctions, and gatekeeper motions. She said nothing about the Rule 60(b)(4) proposed order — the one order she actually did submit and that Judge Stone signed on February 12, 2026. (**Exhibit S.**) Toulouse never served Plaintiff with a copy of the Rule 60(b)(4) proposed order before Judge Stone signed it, denying Plaintiff any opportunity to review, object to, or respond to the proposed order that stripped the protection from his $1.3 million in property. Yet Judge Stone's February 12, 2026 Order employed the identical Rule 60(b)(4) theory from Toulouse's February 6 motion. Either Stone acted on a motion never properly noticed to Plaintiff and never set for hearing, or Stone independently adopted the same legal theory defense counsel filed three days earlier. Either scenario constitutes a denial of due process: Plaintiff was never given notice or an opportunity to respond to the Rule 60(b)(4) argument that resulted in the vacatur of the protective order.

53A. In a separate email sent on the same date, Toulouse provided Plaintiff with "a copy of the proposed Order from Monday" — confirming that she personally drafted the Rule 60(b)(4) order that Judge Stone signed. (**Exhibit V.**) Toulouse sent this email only after Plaintiff tracked her down by telephone — two days after the February 9 hearing and on the same day Judge Stone signed the order. Plaintiff was never served with the proposed order through File and Serve, through the Court, or by any other means before Stone signed it. The juxtaposition of Toulouse's two February 12 emails is devastating: in Email 1, she carefully avoids mentioning the Rule 60(b)(4) order; in Email 2, she casually confirms she authored it. Defense counsel drafted the order that vacated Plaintiff's property protection, submitted it to the substitute judge ex parte, never served Plaintiff, and only disclosed it after Plaintiff demanded it by telephone. This is not zealous advocacy — it is a deprivation of due process orchestrated by defense counsel.

54. Additionally, the Moore County Clerk's Office twice refused Plaintiff's written requests for copies of proposed orders in Plaintiff's own case. When Plaintiff demanded copies, Assistant Clerk of Superior Court Amanda J. Ballard responded in writing on February 12, 2026 that proposed orders are "NOT public record until they have been signed and clocked in" and stated: "As for refusing to give you copies of something I do NOT have in the system is not a refusal." (**Exhibit U.**) Ballard's position conflates the general public's access to court records with a party's due process right to notice and an opportunity to be heard. Plaintiff is not "anyone" seeking public records — Plaintiff is a party to this litigation entitled to see and respond to any proposed order before a judge signs it. The Clerk's policy of withholding proposed orders from parties until after they are signed and entered effectively denies due process by operation of administrative rule.

54A. The Moore County Clerk's Office bears direct responsibility for the service delay that Judge Stone used as the sole basis to vacate the TRO. Under North Carolina Rule of Civil Procedure 4(a), when a complaint is filed, the Clerk "shall issue" summons. Plaintiff filed his Complaint on December 12, 2025. The Clerk's Office did not issue a civil summons at that time and did not inform Plaintiff that a summons needed to be separately requested. (**Exhibit O.**) No summons activity appears in the Register of Actions until January 30, 2026 — a gap of 49 days attributable to the Clerk's failure to perform a mandatory duty. When Plaintiff discovered the deficiency and requested the summons on January 30, 2026, the Clerk's Office delayed issuance for three additional days until February 2, 2026. Judge Stone then used this Clerk-caused delay as the basis to vacate Judge Stokes' protective order — punishing Plaintiff for the Clerk's own failure.

54B. The pattern is unmistakable: the Clerk's Office failed to issue summons at filing, contributing to the service delay; Defendants' counsel submitted a proposed order stripping Plaintiff's property protection without serving Plaintiff with a copy; the Clerk's Office refused to provide Plaintiff with proposed orders in his own case; and Judge Stone signed the proposed

order without affording Plaintiff notice or an opportunity to respond. At every juncture, the Moore County court system operated to Defendants' advantage and to Plaintiff's detriment, further demonstrating the inadequacy of the state court remedy and the necessity of federal intervention.

## V. FEDERAL CLAIMS

### COUNT I — RICO CONSPIRACY (18 U.S.C. § 1962(d))

55. Plaintiff incorporates all preceding paragraphs by reference.

56. Defendants Van O'Linda, Low, Gary D. Bullard, Kimberly Ann Bullard, and their respective law firms and entities constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4), associated in fact for the purpose of depriving Plaintiff of his property rights through a pattern of racketeering activity.

57. The pattern of racketeering activity includes multiple predicate acts of:

> a. Wire fraud (18 U.S.C. § 1343): Van O'Linda's November 3, November 4, and December 2, 2020 emails containing material misrepresentations transmitted via interstate electronic communications for the purpose of fraudulently acquiring Plaintiff's properties (**Exhibits F, G, H**);

> b. Mail fraud (18 U.S.C. § 1341): The recording and transmission of fraudulent deeds through the United States mail and Moore County Registry (**Exhibits C, D**); and

> c. Fraud upon the court: Low's procurement of the June 20, 2016 Consent Order through intentional deception. (**Exhibit A.**)

58. As a direct and proximate result of Defendants' RICO conspiracy, Plaintiff has been injured in his business and property in an amount not less than $1.3 million. Plaintiff is entitled to treble damages, costs, and reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c).

### COUNT II — QUIET TITLE

59. Plaintiff incorporates all preceding paragraphs. Plaintiff is the rightful owner of both properties by deed. As to Property 2 (916 Stanton Hill Road), the foreclosure was declared void by the Court of Appeals in COA13-833, and Plaintiff never lost title. (Exhibit A.) As to Property 1 (420 US Highway 15-501), Plaintiff's title was never validly transferred: the foreclosure

arising from the same predatory loan involved the same defective service, and the Consent Order through which Plaintiff's rights were purportedly surrendered was procured by fraud upon the court. (Exhibit B.) All subsequent transfers of both properties — including to Whitaker's Holdings, to the Bullards, and to GDBKB, LLC — are void ab initio. (**Exhibit B.**) Plaintiff is entitled to a judgment quieting title in his name.

## COUNT III — FRAUD UPON THE COURT

60. Plaintiff incorporates all preceding paragraphs. The June 20, 2016 Consent Order in 15 CVS 513 was procured by Defendant Low through fraud upon the court. (**Exhibit A.**) Plaintiff seeks relief from that order and a declaration that it is void.

## COUNT IV — BREACH OF FIDUCIARY DUTY

61. Plaintiff incorporates all preceding paragraphs. Defendants Low and Van O'Linda owed fiduciary duties to Plaintiff as his attorneys. Both breached those duties by acting adversely to Plaintiff's interests for their own benefit and the benefit of adverse parties.

## COUNT V — FRAUDULENT CONVEYANCE

62. Plaintiff incorporates all preceding paragraphs. The transfer of both properties from the Bullards to GDBKB, LLC for zero dollars constitutes a fraudulent conveyance. (**Exhibit C.**) Plaintiff is entitled to avoid these transfers and recover the properties.

## COUNT VI — UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST

63. Plaintiff incorporates all preceding paragraphs. Defendants have been unjustly enriched by the acquisition and attempted sale of Plaintiff's properties. The Court should impose a constructive trust on both properties and all proceeds.

## COUNT VII — ABUSE OF PROCESS (Against Robbins May & Rich LLP and Claire C. Toulouse)

64. Plaintiff incorporates all preceding paragraphs.

65. Defendants Robbins May & Rich LLP and Claire C. Toulouse filed a Motion for Sanctions and Motion for Gatekeeper Order on February 6, 2026 (**Exhibit R**), seeking to impose sanctions on Plaintiff and prevent Plaintiff from making any further filings in the state court. These motions were filed with knowledge that Plaintiff's claims are supported by documented

evidence, and were designed not to advance a legitimate litigation objective, but to silence the victim of the fraud and prevent him from accessing the courts.

66. The Motion for Sanctions was filed without compliance with Rule 11's 21-day safe harbor requirement and without proper service on Plaintiff. The Motion for Gatekeeper Order seeks to bar Plaintiff from the courthouse entirely — a drastic remedy designed not to protect the integrity of the judicial system, but to silence a fraud victim and prevent him from pursuing documented claims supported by recorded deeds, a Court of Appeals decision, and a DOJ criminal referral acknowledgment.

67. This constitutes an abuse of process — the use of litigation tools for an improper purpose, namely to prevent a fraud victim from seeking judicial relief.

## VI. EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

68. Plaintiff respectfully moves this Court for an emergency Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b).

### A. Likelihood of Success on the Merits

69. Plaintiff is likely to succeed on the merits because: Plaintiff held title to both properties by deed; the North Carolina Court of Appeals declared the foreclosure VOID in COA13-833 (2014) (**Exhibit B**); under *Elam v. Hyatt*, 174 N.C. 426 (1917), void foreclosures cannot transfer valid title; both properties were collateral for the same predatory loan from the Dowds and subject to the same defective service; the Consent Order purporting to surrender Plaintiff's rights to both properties was procured through fraud upon the court; Van O'Linda acquired the properties through a straw purchaser scheme while serving as Plaintiff's attorney; GDBKB, LLC operates from Van O'Linda's law office; and the U.S. Department of Justice has acknowledged receipt of a criminal referral concerning this conduct. (**Exhibit N.**)

### B. Irreparable Harm

70. Without a TRO, Plaintiff will suffer irreparable harm. The properties are actively being marketed for sale at approximately $1.3 million. (**Exhibit I.**) Real property is unique and cannot be replaced with money damages. Once the properties are sold to a third-party purchaser, Plaintiff's ability to recover them will be destroyed or severely impaired.

71. The state court TRO that protected these properties was vacated on February 12, 2026. The properties are now completely unprotected. The anticipated closing date is on or about February 25, 2026.

71A. On February 13, 2026, Sierra Ritchie, the Superior Court Manager for District 29, sent a written email to all parties confirming that: (a) Judge Stone "directed Attorney Toulouse to

prepare" the Rule 60(b) Order at the February 9 hearing — confirming the outcome was predetermined before Plaintiff was denied the right to speak; (b) "No other motion has been heard nor has any other proposed order been submitted" — confirming that Plaintiff's Ex Parte Motion to Stay, Motion for Continuance, and all other filings were completely ignored; and (c) the remaining defense motions will not be set for hearing until March 9, 2026 — two weeks after the anticipated closing date of February 25, 2026. (Exhibit Y.) The state court system is structurally incapable of protecting Plaintiff on this timeline. The next hearing is scheduled after the properties will have already been sold. This Court is Plaintiff's only avenue for timely relief.

## C. Balance of Hardships

72. The balance of hardships tips decisively in Plaintiff's favor. Plaintiff stands to lose $1.3 million in unique real property. Defendants, by contrast, obtained the properties through an alleged fraudulent scheme — paying zero dollars for the transfer from the Bullards to GDBKB. A TRO merely preserves the status quo while this Court adjudicates the merits.

## D. Public Interest

73. The public interest favors granting injunctive relief. The public has a strong interest in preventing attorneys from defrauding their own clients, preventing straw purchaser schemes, and ensuring that court orders obtained through fraud upon the court are not used to deprive property owners of their rights.

## E. Inadequacy of State Court Remedy

74. The plaintiff has no adequate remedy in state court. Judge Stokes granted a stay after thorough review. Judge Stone vacated it with a one-page order containing no findings and no legal analysis (**Exhibit S**), after hearing from only Van O'Linda's counsel while commanding Plaintiff not to speak. Defendant Van O'Linda is now seeking a **gatekeeper order** to prevent Plaintiff from making any further filings in state court (**Exhibit R**). If granted, Plaintiff would be denied access to the state court system entirely. The state court process has failed.

75. The inadequacy of the state court remedy is further demonstrated by the systemic failures of the Moore County Clerk's Office. The Clerk failed to issue summons when the Complaint was filed on December 12, 2025, as required by Rule 4(a), then failed to inform Plaintiff of the omission. (**Exhibit O.**) The resulting 49-day gap in service was then used as the basis for vacating the TRO. The Clerk's Office has also adopted a policy of withholding proposed orders from parties until after they are signed (Exhibit U), denying Plaintiff the ability to review or object to the very order that stripped protection from his $1.3 million in property. Defendants' counsel submitted that proposed order without serving it on Plaintiff (Exhibits T, V), and the Clerk facilitated this concealment by refusing to provide Plaintiff with copies. The Clerk's Office created the service delay, then the court punished Plaintiff for it, and the Clerk's own policies prevented Plaintiff from even seeing the proposed order before the judge signed it.

Federal intervention is the only remaining avenue for protection of Plaintiff's property and constitutional rights.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff Charles Dexter Johnson respectfully requests that this Court:

a. Issue an emergency Temporary Restraining Order, without bond or with nominal bond, restraining Defendants, their agents, employees, attorneys, and all persons acting in concert with them from selling, transferring, conveying, encumbering, or otherwise disposing of the properties located at 420 US Highway 15-501 and 916 Stanton Hill Road, Carthage, NC 28327;

b. Schedule a hearing on Plaintiff's request for a Preliminary Injunction at the earliest available date;

c. Enter a Preliminary Injunction maintaining the restraint on transfer of the properties through the final resolution of this action;

d. Enter a judgment quieting title to both properties in Plaintiff's name;

e. Award Plaintiff treble damages pursuant to 18 U.S.C. § 1964(c);

f. Impose a constructive trust on both properties and any sale proceeds;

g. Award Plaintiff damages for abuse of process against Defendants Robbins May & Rich LLP and Claire C. Toulouse;

h. Award Plaintiff costs and reasonable attorney's fees; and

i. Grant such other and further relief as this Court deems just and proper.

## VIII. EXHIBITS REFERENCED HEREIN

**Exhibit A** — Consent Order, Moore County Case No. 15 CVS 513 (June 20, 2016)

**Exhibit B** — Court of Appeals Decision, Johnson v. Dowd, et al., No. COA13-833 (July 15, 2014)

**Exhibit C** — Deed: Bullards to GDBKB, LLC ($0.00), Book 5771, Pages 390-391

**Exhibit D** — Deed: Whitaker's Holdings to Bullards ($425,000), Book 5520, Pages 62-65

**Exhibit E** — GDBKB, LLC Articles of Organization (December 29, 2020)

**Exhibit F** — Van O'Linda Email to Plaintiff (November 3, 2020)

**Exhibit G** — Van O'Linda Email to Plaintiff (November 4, 2020)

**Exhibit H** — Van O'Linda Email to Plaintiff (December 2, 2020)

**Exhibit I** — Property Listing(s), 420 US Hwy 15-501 & 916 Stanton Hill Rd

**Exhibit J** — Emergency Order of Judge Stokes Staying Sale (February 4, 2026)

**Exhibit K** — Proof of Service Initiation (February 2, 2026)

**Exhibit L** — Lis Pendens Filed on Subject Properties (December 12, 2025)

**Exhibit M** — Motion for Continuance (Hand-Delivered February 9, 2026)

**Exhibit N** — DOJ Criminal Referral and Acknowledgment from Chief David L. Jaffe

**Exhibit O** — Register of Actions, Case No. 25CV002561-620

**Exhibit P** — Ex Parte Motion to Stay Sale with New Evidence (February 4, 2026)

**Exhibit Q** — Affidavit of Charles Dexter Johnson in Support of TRO

**Exhibit R** — Defendant Van O'Linda's Motion to Dismiss, Rule 60 Motion, Sanctions, and Gatekeeper Order (Filed February 6, 2026 — Same Date as Judge Substitution)

**Exhibit S** — Order of Judge Stone Vacating Stay (Filed February 12, 2026 — One Page, No Findings)

**Exhibit T** — Email Correspondence from Claire C. Toulouse, Esq. (February 12, 2026) — Defendants' counsel confirming (1) she is "not aware of any order allowing dismissal of this action, sanctions, nor a gatekeeper order"; (2) her February 6, 2026 motions "have not been set for hearing, have not been heard, nor ruled upon"; (3) Toulouse conspicuously silent regarding the Rule 60(b)(4) proposed order she submitted and that Judge Stone signed; (4) Toulouse never served Plaintiff with the Rule 60(b)(4) proposed order

**Exhibit U** — Email from Amanda J. Ballard, Asst. Clerk of Superior Court, Moore County (February 12, 2026) — Clerk stating (1) proposed orders are "NOT public record until they have been signed and clocked in"; (2) "refusing to give you copies of something I do NOT have in the system is not a refusal"; (3) confirming Clerk's policy of withholding proposed orders from parties before judicial signature, denying Plaintiff opportunity to review and object

**Exhibit V** — Second Email from Claire C. Toulouse, Esq. (February 12, 2026) — Defendants' counsel confirming she authored "the proposed Order from Monday" (the Rule 60(b)(4) order Judge Stone signed); sent to Plaintiff only after Plaintiff tracked counsel down by telephone; Plaintiff never served with proposed order before judicial signature; establishes defense counsel drafted the order that vacated Plaintiff's property protection ex parte

**Exhibit W** — Deed of Trust (Book 3449, Pages 312-315, Instrument # 2008012291, July 29, 2008) and Special Warranty Deed (Book 4118, Pages 17-18, Instrument # 2012017297, October 23, 2012) — Establishing: (1) Dowds' predatory two-year balloon loan of $150,100.00 secured by both properties; (2) Robert M. Friesen as Trustee on predatory loan; (3) Dowds' conveyance of both parcels (Plat Cabinet 5, Slide 109 and Plat Cabinet 14, Slide 75) to Whitaker's Holdings, LLC after void foreclosure; (4) Friesen prepared both instruments; (5) Friesen's address on 2012 deed is 120 Applecross Road, Pinehurst, NC 28374 — the same address as Defendant Robbins May & Rich LLP; (6) Whitaker's Holdings operated from Plaintiff's stolen 4,800-square-foot facility at 420 US 15-501

**Exhibit X** — Letter from R. Hayes Hofler III, Esq., Law Offices of Hayes Hofler, P.A. (February 27, 2019) — Independent appellate counsel confirming: (1) "The Consent Order actually reverses the COA decision of 7/15/14"; (2) Consent Order "could be voidable under Rule 60 as having been unconscionably obtained for no or insufficient consideration"; (3) "the Dowds, Whitaker's and TRO conspired to loan money to Johnson whom they knew had just been discharged from a Chapter 7 bankruptcy and was otherwise vulnerable to a predatory lending scheme"; (4) "Whitaker's Holdings and TRO are each corporate entities owned and operated by the same persons"; (5) Aaron Low signed Consent Order for Plaintiff, Dowds did not consent

> **Exhibit Y** — Email from Sierra Ritchie, Superior Court Manager, District 29 (February 13, 2026) — Court's own manager confirming: (1) Judge Stone "directed Attorney Toulouse to prepare" the Rule 60(b) Order; (2) no other motion has been heard; (3) remaining motions set for March 9, 2026 — two weeks after the anticipated closing date; state court structurally incapable of providing timely relief

# IX. VERIFICATION

I, Charles Dexter Johnson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in this Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Executed this ⎽⎽ day of February, 2026.

_(signature)_

Charles Dexter Johnson, Pro Se Plaintiff

524 Dixon School Road

Kings Mountain, NC 28086

Phone: (980) 729-8456

Email: charles@hunkar.vip

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing Verified Complaint and Emergency Motion for Temporary Restraining Order has been served upon all Defendants by certified mail, return receipt requested, and/or by the United States Marshals Service as directed by the Court, on this the ____ day of February, 2026.  → _date to up to 90 days_

_(signature)_

Charles Dexter Johnson, Pro Se Plaintiff

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

**CHARLES DEXTER JOHNSON,**
      Plaintiff,

    v.                         **CIVIL ACTION NO. 1:26-CV-_____**

**WILLIAM M. VAN O'LINDA, JR., et al.,**
      Defendants.

## INDEX OF EXHIBITS

*Filed in Support of Verified Complaint and Emergency Motion for Temporary Restraining Order*

### THE VOID FORECLOSURE AND COURT OF APPEALS VICTORY

**EXHIBIT A:** Consent Order, Moore County Superior Court Case No. 15 CVS 513 (June 20, 2016) — Signed by Defendant Aaron C. Low without Plaintiff's informed consent, requiring Plaintiff to "waive, renounce, and transfer" all property claims, effectively reversing COA13-833

### THE FRAUD UPON THE COURT

**EXHIBIT B:** North Carolina Court of Appeals Decision, *Johnson v. Dowd, et al.*, No. COA13-833 (July 15, 2014) — Ruling declaring the foreclosure VOID, vacating default judgments, and vacating sanctions against Plaintiff

### THE STRAW PURCHASER SCHEME

**EXHIBIT C:** Deed from Gary D. Bullard and Kimberly Ann Bullard to GDBKB, LLC — Book 5771, Pages 390-391, Moore County Registry (on or about December 22, 2021) — Transfer for ZERO dollars ($0.00), NC Revenue Stamp: $0.00. Prepared by: William M. Van O'Linda, Jr.

**EXHIBIT D:** Deed from Whitaker's Holdings, LLC to Gary D. Bullard and Kimberly Ann Bullard — Book 5520, Pages 62-65, Moore County Registry (January 21, 2021) — Purchase for $425,000. Shows Bullards as straw purchasers in the chain.

**EXHIBIT E:** GDBKB, LLC Articles of Organization filed with North Carolina Secretary of State (December 29, 2020) — Registered Agent: William M. Van O'Linda, Jr. Formed 27 days after Van O'Linda's December 2, 2020 email to Plaintiff.

### THE WIRE FRAUD — VAN O'LINDA EMAILS

**EXHIBIT F:** Email from William M. Van O'Linda, Jr. to Plaintiff (November 3, 2020) — Misrepresenting North Carolina law and discouraging Plaintiff from pursuing property rights while serving as Plaintiff's attorney

**EXHIBIT G:** Email from William M. Van O'Linda, Jr. to Plaintiff (November 4, 2020) — Continuing misrepresentations regarding the Court of Appeals ruling and Plaintiff's property rights

**EXHIBIT H:** Email from William M. Van O'Linda, Jr. to Plaintiff (December 2, 2020) — Falsely claiming a competing attorney was interested in the properties, fabricated to pressure Plaintiff into abandoning claims. GDBKB, LLC was formed 27 days later.

## IMMINENT SALE — IRREPARABLE HARM

**EXHIBIT I:** Property listing(s) for 420 US Highway 15-501 and 916 Stanton Hill Road, Carthage, NC 28327 — Showing properties actively marketed for sale at approximately $1.3 million combined value

## STATE COURT PROCEEDINGS — MOORE COUNTY

**EXHIBIT J:** Order of Judge Stephen C. Stokes, Moore County Superior Court, Case No. 25 CV 002561-620 — Staying the sale of the properties after review of Plaintiff's filings

**EXHIBIT K:** Proof of Service Initiation (February 2, 2026) — Documentation showing service of process was initiated on all Defendants one week before Judge Stone vacated the stay

**EXHIBIT L:** Lis Pendens Filed on Subject Properties — Filed December 12, 2025 in Moore County Superior Court; notice to all potential purchasers that the properties at 420 US Highway 15-501 and 916 Stanton Hill Road are subject to pending litigation

## PLAINTIFF'S SWORN TESTIMONY

**EXHIBIT M:** Plaintiff's Motion for Continuance, hand-delivered February 9, 2026 — Requesting continuance to April 6 or May 11, 2026. Never addressed by Judge Stone.

## FEDERAL LAW ENFORCEMENT

**EXHIBIT N:** Criminal Referral to U.S. Department of Justice, Violent Crime and Racketeering Section (September 3, 2025), with Acknowledgment from David L. Jaffe, Chief (October 1, 2025). Supplemental referral naming Van O'Linda and GDBKB, LLC filed December 19, 2025.

## COURT RECORDS

**EXHIBIT O:** Register of Actions, Case No. 25CV002561-620, Moore County Superior Court — Confirming timely summons request January 30, 2026; Clerk's issuance February 2, 2026; 60-day Rule 4(c) deadline February 10, 2026

## PLAINTIFF'S FINANCIAL STATUS

**EXHIBIT P:** Plaintiff's Ex Parte Motion to Stay Sale of Properties with New Documented Evidence, filed February 4, 2026 — Forwarded to Judge Stone via Court Coordinator Sierra Ritchie on February 6, 2026. Never addressed by Judge Stone.

**EXHIBIT Q:** Affidavit of Charles Dexter Johnson in Support of TRO — 68-paragraph affidavit reviewed by Judge Stokes prior to entering Emergency Order

## DEFENDANT'S OWN ADMISSIONS

**EXHIBIT R:** Defendant Van O'Linda's combined Motion to Dismiss, Rule 60 Motion, Motion for Sanctions, and Motion for Gatekeeper Order, filed February 6, 2026 at 4:12 PM by Claire C. Toulouse, Robbins May & Rich LLP (**Same date as judge substitution**) — Certificate of Service (page 9) reveals GDBKB, LLC and Van Camp & Van O'Linda, PLLC share **identical address: 90 Cherokee Road, Third Floor Suite, Pinehurst, NC 28374**

## JUDGE STONE'S ORDER

**EXHIBIT S:** Order of Judge Michael A. Stone, filed February 12, 2026 at 2:49 PM — **One page, one paragraph, no findings of fact, no conclusions of law, no legal analysis.** Claims "the Court's own initiative" under Rule 60(b)(4). States "hearing from counsel" while Plaintiff (pro se) was commanded not to speak.

## DEFENDANTS' COUNSEL ADMISSIONS

**EXHIBIT T:** Email Correspondence from Claire C. Toulouse, Esq., Robbins May & Rich LLP (February 12, 2026) — Defendants' counsel confirming: (1) she is "not aware of any order allowing dismissal of this action, sanctions, nor a gatekeeper order"; (2) her February 6, 2026 motions "have not been set for hearing, have not been heard, nor ruled upon"; (3) Defendants' counsel never provided Plaintiff with a copy of the proposed Rule 60(b)(4) Order before submission to Judge Stone; and (4) Defendants' counsel initially refused to provide copies of filed motions

**EXHIBIT U:** Email from Amanda J. Ballard, Assistant Clerk of Superior Court, Moore County (February 12, 2026) — Clerk confirming: (1) policy of denying parties access to proposed orders before they are signed; (2) Clerk's Office is "NOT responsible" for providing proposed orders to parties; (3) Plaintiff is "held to the same rules as an attorney"; and (4) contradicting prior Clerk's Office statements about existence of a second proposed order

**EXHIBIT V:** Second Email from Claire C. Toulouse, Esq., Robbins May & Rich LLP (February 12, 2026) — Defendants' counsel confirming she authored "the proposed Order from Monday" (the Rule 60(b)(4) order Judge Stone signed on February 12, 2026); sent to Plaintiff only after Plaintiff tracked counsel down by telephone two days after the hearing; Plaintiff never served with proposed order before judicial signature; juxtaposed with first email of the same date in which Toulouse deliberately avoided mentioning the Rule 60(b)(4) order; establishes defense counsel drafted the order that vacated property protection ex parte

**EXHIBIT W:** Deed of Trust (Book 3449, Pages 312-315, Instrument # 2008012291, July 29, 2008) and Special Warranty Deed (Book 4118, Pages 17-18, Instrument # 2012017297, October 23, 2012) — Establishing: (1) Dowds' predatory two-year balloon loan of $150,100.00 secured by both properties; (2) Robert M. Friesen as Trustee; (3) Dowds' conveyance of both parcels to Whitaker's Holdings, LLC after void foreclosure; (4) Friesen prepared both instruments; (5) Friesen at 120 Applecross Road — same address as Defendant Robbins May & Rich LLP; (6) Whitaker's Holdings operated from Plaintiff's stolen 4,800-square-foot facility at 420 US 15-501

**EXHIBIT X:** Letter from R. Hayes Hofler III, Esq., Law Offices of Hayes Hofler, P.A. (February 27, 2019) — Independent appellate counsel confirming: (1) "The Consent Order actually reverses the COA decision of 7/15/14"; (2) Consent Order "could be voidable under Rule 60 as having been unconscionably obtained for no or insufficient consideration"; (3) "the Dowds, Whitaker's and TRO conspired to loan money to Johnson whom they knew had just been discharged from a Chapter 7 bankruptcy and was otherwise vulnerable to a predatory lending scheme"; (4) "Whitaker's Holdings and TRO are each corporate entities owned and operated by the same persons"; (5) Aaron Low signed Consent Order for Plaintiff, Dowds did not consent

## STATE COURT'S INABILITY TO PROTECT PLAINTIFF

**EXHIBIT Y:** Email from Sierra Ritchie, Superior Court Manager, District 29 (February 13, 2026) — Court's own manager confirming: (1) Judge Stone "directed Attorney Toulouse to prepare" the Rule 60(b) Order at the February 9 hearing; (2) "No other motion has been heard nor has any other proposed order been submitted"; (3) remaining defense motions set for March 9, 2026 — two weeks after anticipated closing date of February 25, 2026; state court structurally incapable of providing timely relief

Respectfully submitted,

Charles Dexter Johnson, Pro Se Plaintiff

524 Dixon School Road

Kings Mountain, NC 28086
Phone: (980) 729-8456
Email: charles@hunkar.vip

# EXHIBIT COVER SHEETS

*Print each page below, place on top of the corresponding document*